FILED
2010 Feb-09 PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| Marvin Borden, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 09-G-1186-J |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Marvin Borden, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3)   whether her impairment meets or equals one listed by the Secretary;

(4)   whether the claimant can perform her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Randall C. Stout, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

3

### THE STANDARD WHEN THE CLAIMANT TESTIFIES HE
### SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

5

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

In the present case the plaintiff alleges he is disabled because of neck and back pain.  The plaintiff was 50 years old on the date he alleged onset of disability.  His past relevant work had been at the medium and heavy levels of exertion.  At the plaintiff's ALJ hearing the vocational expert testified that the plaintiff had no work skills that would transfer to sedentary work.  Record 242.  Based upon the plaintiff's age and the lack of transferable skills, grid rule 201.14 would dictate a finding that the plaintiff is disabled if he is limited to sedentary work.[1]  The ALJ, however, found the plaintiff was able to perform the full range of light work.  Record 13.  In making this finding the ALJ refused to credit the plaintiff's pain testimony.

---

[1] The Medical-Vocational Guidelines, (the "grids") found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).  When the claimant's vocational factors and RFC coincide with all the criteria of a particular rule, the rule determines whether the claimant is disabled or not.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

At the hearing the plaintiff testified that most of the time he experiences pain at a level of eight on a scale of one to ten. Record 230. The plaintiff also testified that he was unable to walk for more than 10 to 15 minutes at a time and had to lie down for approximately one half of the day between 8 a.m. and 5 p.m. Record 232. The vocational expert testified that if the plaintiff suffered from pain at the level he testified, he would be unable to sustain work. Record 240. The vocational expert also testified that if the plaintiff were required to lie down for extended periods during the workday as he testified, gainful employment would be precluded. Record 240.

The ALJ did not base his refusal to credit the plaintiff on a finding that he did not meet the Eleventh Circuit pain standard: "[T]he undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause some of his symptoms...." Record 13. The ALJ, however, considered the plaintiff's pain testimony, but refused to credit it. Unless the ALJ properly discredited the plaintiff's testimony, he must be found disabled based on the testimony of the vocational expert at the ALJ hearing.

The ALJ discredited the plaintiff's pain testimony largely based upon the daily activities questionnaire he completed in January 2008:

> At that time, he reported he took care of his personal needs, shopped once or twice a month, preformed some yard work, watched television, and read. He also reported that he went out of the home twice a day, generally going to the store. (Exhibit 6E).

Record 13.  The activities reported by the plaintiff on Exhibit 6E are not inconsistent with pain of such severity that it would prevent light work.  The form does not indicate what type of yard work the plaintiff performed, and the form indicated the plaintiff needed help to complete his chores.  Elsewhere on the form the plaintiff indicated that if he tried to work a full day, he would be unable to get out of the bed for several days.  In short, none of the activities recited by the ALJ are inconsistent with an inability to perform light work due to pain.

The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain.  In this Circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

The only other reason given by the ALJ in his opinion for refusing to credit the plaintiff's pain testimony was that "treatment records do not support the limitations he alleges." Record 14. However, this finding is not supported by substantial evidence. The medical records show that the plaintiff sought treatment for his pain on a consistent and ongoing basis.

The plaintiff's primary treating physician is Dr. Morrow. In August 2007 the plaintiff saw Dr. Morrow's nurse practitioner complaining of pain in his neck and back. The treatment note indicates that he was to be referred to a specialist for orthopedic evaluation. On September 27, 2007, the plaintiff was again seen by Dr. Morrow's nurse practitioner complaining of headaches and neck and shoulder pain. The nurse practitioner found palpable spasms on the right cervical spine.

On October 19, 2007, the plaintiff had cervical x-rays, which the attending radiologist interpreted as showing moderately advanced degenerative discopathy. There was no prevertebral soft tissue swelling and disc spaces were preserved.

On October 19, 2007, the plaintiff saw Dr. Campbell, an orthopedic specialist. The plaintiff rated his pain at 8/10. Dr. Campbell interpreted the plaintiff's x-ray as showing mild degenerative changes, which "are probably not the cause of this pain." However, Dr. Campbell found the plaintiff's range of motion in his neck was decreased secondary to pain and he was tender to palpitation over the right side of his neck.

On October 25, 2007, the plaintiff saw Dr. Morrow to have a trigger point injection, which had been prescribed by Dr. Campbell. On November 8, 2007, the plaintiff again saw Dr. Morrow for an injection to the neck. The plaintiff told Dr. Morrow that the previous shot had helped for a few days.

On November 30, 2007, the plaintiff was seen by Dr. Campbell. His medications at that time included Lortab 7.5 and his pain level was reported at 6/10. He was found to have tenderness in the cervical spine but no radicular symptoms. An MRI of the cervical spine was scheduled to better evaluate his pain and he was given an additional prescription for muscle relaxers.

On March 19, 2008, the plaintiff was seen by Dr. Zhou for nerve conduction testing. It showed no evidence of cervical radiculopathy and no evidence of

entrapment neuropathy in the right arm.  He also had an MRI of the cervical spine on that same date.  The radiologist interpreted it as showing mild degenerative changes at C5-6 with some resultant canal narrowing without cord deformity or signal abnormality.  However, the radiologist noted joint hypertrophy at C6 that might be impinging on the bilateral nerve roots.  The radiologist opined:  "This may contribute to mild IV [sic] or radiculopathy under physiological stress."  Record 182.

On April 2, 2008, the plaintiff was seen by Dr. Campbell.  Dr. Campbell noted that the plaintiff had an MRI, which showed mild degenerative changes with some joint hypertrophy in the neck.  The plaintiff now complained of low back pain in addition to neck pain.  The plaintiff reported pain at a 7/10 level.  Range of motion of the neck and spine were full but painful.  He was prescribed Neurontin and Ultram.

On June 24, 2008, the plaintiff was seen by Dr. Campbell.  The plaintiff rated his pain at 7/10 and reported that the Neurontin had not helped.  He again had full range of motion in the neck and spine, but with pain.  The diagnostic impression included right cervical radiculopathy and back pain.  His dosage of Neurontin was increased and a different muscle relaxer was tried.

The plaintiff saw Dr. Morrow's nurse practitioner on September 26, 2008.  The plaintiff reported neck pain and indicated the Neurontin had not helped.  He asked about getting a TENS unit.[2]

---

[2] Transcutaneous electric nerve stimulation unit.

The above medical summary shows the plaintiff's treatment record supports his pain testimony. The treatment record shows the plaintiff repeatedly sought treatment from both his primary care physician and orthopedic specialist in order to relieve his pain. None of the doctors' treatment notes suggest they did not believe the plaintiff was in pain. To the contrary, the medical records show the plaintiff's doctors prescribed narcotic pain medications, muscle relaxers, diagnostic testing, and trigger point injections in an attempt to relieve the plaintiff's pain. The medical evidence, therefore, shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

With the proper legal standards in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. The plainitt's daily activities are not inconsistent with pain that would prevent the performance of light work. Likewise, contrary to the ALJ's assertion, the treatment record strongly supports the plaintiff's testimony that he suffered from disabling pain.

Therefore, the ALJ failed to satisfy the requirements set forth in Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he [Commissioner]

has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.  Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 9 February 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.